IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ERIC E.,

    Plaintiff,

v.                                                                                    CIVIL ACTION NO. 5:21-cv-00566

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

    Defendant.

## PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Eric E. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on October 25, 2021, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8), and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 11). Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding United States District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 8), **DENY** the Commissioner's request to affirm her decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## I.     BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 55 years old at the time of his alleged disability onset date, as amended, and 57 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. 7-26; 202.)[1] Claimant has a High School Diploma and three years of college. (Tr. 21.) He has worked in the past as a systems administrator and job handler. (Tr. 258.)

Claimant protectively filed his application for a period of disability and Disability Insurance Benefits on June 11, 2019, alleging that he became disabled on February 10, 2019,[2] due to extreme abdominal pain, constant nausea, constant headache, deafness in his left ear, severe allergies, anxiety disorder, and depressive disorder/depression. (Tr. 66; 202.) His claim was initially denied on October 23, 2019, and again upon reconsideration on November 22, 2019. (Tr. 11; 63-73; 74-84.) Thereafter, on January 2, 2020, Claimant filed a written request for hearing. (Tr. 112-113.) An administrative hearing was held before an ALJ on March 12, 2021; the hearing was held via telephone due to the circumstances presented by the COVID-19 pandemic. (Tr. 32-35; 143-145.) On March 30, 2021, the ALJ rendered an unfavorable decision. (Tr. 7-26.) Claimant then sought review of the ALJ's decision by the Appeals Council that same day. (Tr. 1.) The Appeals Council denied Claimant's request for review on September 2, 2021, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1–7.)

---

[1] All references to "(Tr.)" refer to the Transcript of Proceedings filed in this action on December 14, 2021. (ECF No. 7.)

[2] Subsequently on February 24, 2021, Claimant amended his disability onset date to March 15, 2019. (Tr. 217.)

Claimant timely brought the present action on October 20, 2021, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed a timely Answer (ECF No. 6) and a transcript of the administrative proceedings (ECF No. 7) on December 14, 2021. Claimant subsequently filed a timely Memorandum in Support of Plaintiff's Motion for Judgement on the Pleadings (ECF No. 8), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 11). As such, this matter is fully briefed and ripe for resolution.

### B. *Relevant Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it in relevant part here for the convenience of the United States District Judge.

#### i. *Medical Evidence*

##### 1. *Physical Impairments*

First, Claimant's cardiac impairments appear to have been stable during the relevant time period of the amended alleged onset date of March 15, 2019, through the date last insured of March 31, 2020. Claimant presented to CAMC Cardiology clinic for an annual visit on October 10, 2018, shortly before the relevant time period. The history indicates that Claimant had no complaints, was doing well with activities of daily living, and was "very active this time of year carrying corn bags to top of mountain at hunting camp." (Tr. 777.) The following year on September 26, 2019, during the relevant time period, Dr. Elie G. Gharib assessed Claimant's coronary artery disease as stable with no recurrent atrial fibrillation and directed Claimant to continue on his current medications. (Tr. 788, 793.) During the relevant time period Claimant also presented with no cardiac complaints, had an overall normal stress test, showed no dizziness or palpitations, and

3

denied any chest pain. (Tr. 302-03, 305-06, 311, 378, 776-77, 780, 793, 799-800.) The following year on September 29, 2020—after the relevant time period—Claimant returned to the CAMC Cardiology clinic for follow-up and reported no cardiac complaints; he denied chest pain, shortness of breath, palpitations, dizziness, or swelling. He did note that he "is active at home but is limited with exercise due to pain in stomach." (Tr. 799.)

Claimant alleged stomach impairments due to complications of a hiatal hernia—a herniation of part of the stomach through the large muscle separating the abdomen and chest. On March 13, 2019—during the relevant time period—a CT scan of Claimant's chest revealed that a hiatal hernia identified in 2013 had increased drastically in size since then and now contained the entire stomach. (Tr. 371.) Approximately one month later on April 16, 2019, Claimant underwent flexible esophageal gastroscopy, laparoscopy repair of hiatal hernia with Nissen fundoplication, and Collis gastroplasty. (Tr. 320.) Claimant was noted to have tolerated the procedure well. (Tr. 320.) On May 17, 2019, Claimant reported that he was experiencing a lot of physical pain post-surgery. (Tr. 383.)

At a follow-up appointment on July 31, 2019, Claimant presented with complaints of abdominal pain and nausea since his surgery. (Tr. 372.) Claimant was found to have some difficulty swallowing, but otherwise presented normally with stable weight and good appetite. (Tr. 372.) However, an abdominal CT was ordered. (Tr. 463.) An abdominal CT scan dated August 16, 2019, revealed a large hiatal/paraoesophageal hernia and possibly Nissen fundoplication (or "splitting of the esophagus"), with the wrap above the level of the diaphragm. (Tr. 523.) At a September 11, 2019 examination, Claimant was found to have some difficulty swallowing, but otherwise presented normally with stable weight and good appetite; Claimant was advised to make lifestyle changes. (Tr. 623-624.) On October 29, 2019, Claimant reported no improvement in his abdominal pain. (Tr. 479.) Dr. Irene

4

Wasylyk diagnosed "history of fundoplication" and prescribed pravastatin. (Tr. 482.) By February 7, 2020, Claimant continued to complain of abdominal pain and discussed the potential for conversion to surgical weight loss intervention. (Tr. 535-547.) He underwent a diagnostic endoscopic procedure, which showed negative for H. pylori, and normal gastric antral mucosa. (Tr. 550-551.)

In addition to his stomach impairments, Claimant's records also demonstrate problems with degenerative disc disease in Claimant's spine, as well as problems with obesity. First, on March 22, 2019, Claimant's observable gait was normal. (Tr. 387.) A CT scan of the abdomen dated August 2019 showed incidental findings of multilevel degenerative changes of the spine and retrolisthesis of L5 with respect to S1. (Tr. 523, 641.) Notes from November 2019 through January 2020 reflect Claimant's normal gait and appropriate muscle tone, and the record does not reflect that Claimant required any surgical intervention stemming from his degenerative disc disease. Similarly, Claimant presented with a body mass index ("BMI") level of nearly fifty—classified as morbid obesity—based upon his height and weight, reflecting a nearly thirty-pound weight gain between January and late March 2019. (Tr. 346, 377-378, 534-537.) There is no record of Claimant having undergone weight loss surgery.

### 2. *Mental Impairments*

Claimant was seen on January 31, 2019, for anxiety and depression. (Tr. 391.) Mental status findings on March 22, 2019, revealed good mood, normal affect, normal psychomotor activity, logical thoughts, no suicidal ideation or homicidal ideation, fair insight and judgment, and average intelligence. (Tr. 387.) On May 17, 2019, shortly after his first hernia surgery, Claimant presented to his behavioral health clinic and reported that psychiatrically he was doing well, that his depression and anxiety were "under fair

5

control," and he denied any new problems or concerns. (Tr. 383.) He was prescribed Effexor and lorazepam. (Tr. 388.) Mental health notes reflect Claimant's focus and concentration were stable. (Tr. 399, 556, 652.) In April 2019, Claimant's attention was within normal limits. (Tr. 326.)

### ii. *Hearing Evidence*

At the March 12, 2021 hearing before the ALJ, Claimant was represented by counsel; he and one other witness—Vocational Expert ("VE") William Tanzey—testified. (Tr. 45-46.) First, Claimant testified regarding the ways his gastrointestinal impairments have affected him since his hernia surgery. (Tr. 39.) He testified that he is in constant pain, has constant nausea, is unable to lift ten pounds or more without severe pain, has not been able to eat very well due to nausea, and suffers from either constipation or diarrhea "ninety-five percent of the time." (Tr. 39.) To relieve those symptoms, Claimant testified that he has tried "a host of medication," and avoids lifting. (Tr. 40.) He testified that there is not a lot he can do in a typical day. (Tr. 40.) He can feed his dogs and take out the trash, but is not able to do any chores such as laundry, dishes, or grocery shopping. (Tr. 40-41.) He feels constant fatigue, and wakes up four out of seven nights with sharp abdominal pains accompanied by a throbbing headache. (Tr. 42.) He has problems with stooping, kneeling, and crouching; if he has to get down on the floor for any reason, he strains himself to get back up and experiences sharp stomach pain. (Tr. 43.)

Claimant also testified that he takes Effexor and Ativan for his mental-health impairments. (Tr. 43.) He noticed difficulty handling stressful situations and has difficulty with anxiety in large groups of people. (Tr. 44.) He has problems with focus and concentration during the daytime due to his pain and fatigue. (Tr. 44-45.)

Finally, VE Tanzey testified. (Tr. 57-62.) He classified Claimant's past work as a

6

composite between an equipment installer and a computer systems analyst or administrator, which is skilled work with a Specific Vocational Preparation ("SVP") of seven. (Tr. 51-56.) In response to hypothetical limitations posed by the ALJ, the VE testified that with the Claimant's extensive experience and job skills, there were jobs available in the national economy that the hypothetical individual could perform. (Tr. 57.) The VE also testified that if Clamant were off-task ten percent or more of the time, he would not be able to perform his past work. (Tr. 52.)

### C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.\* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's [RFC]" before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks

8

omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of his or her past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If the claimant does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether he or she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find him or her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, the ALJ will find him or her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant had not engaged in substantial gainful activity since March 15, 2019, the amended alleged onset date. (Tr. 14.) The ALJ explained that he found Claimant's medically-determinable mental impairments of anxiety disorder and depressive disorder, considered singly and in combination, did not cause more than minimal limitation in Claimant's ability to perform basic mental work activities and are therefore non-severe. (Tr. 15.) In contrast, the ALJ found that Claimant's obesity, hiatal hernia, degenerative disc disease, and history of both coronary artery disease and atrial fibrillation constituted "severe" impairments. (Tr. 14.) However, the ALJ found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

Assessing Claimant's RFC, the ALJ found that Claimant's medically-determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other record evidence. (Tr. 18.) The ALJ determined that during the relevant time period the Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with limitations. (Tr. 17.) Specifically, the ALJ determined that Claimant was capable of occasionally reaching overhead bilaterally and occasionally climbing ramps and stairs, but could never climb ladders, ropes, or scaffolds. Further, the ALJ determined that the Claimant could frequently balance and occasionally stoop, kneel, crouch, and crawl. He could have occasional exposure to unprotected heights and heavy/hazardous machinery. He could have frequent exposure to extreme cold, extreme heat, and vibration. (Tr. 17.)

The ALJ found that Claimant had past relevant work as a systems administrator and an equipment installer, which he noted is a "composite" job (a job that has significant elements of two or more occupations). (Tr. 21.) Agreeing with the testimony of the Vocational Expert ("VE"), the ALJ found that the Claimant was unable to perform past relevant work as actually or generally performed, but that he acquired transferable skills from his past work. (Tr. 21.) The ALJ further characterized Claimant as an individual of advanced age, with at least a high school education. (Tr. 21.) Because the ALJ determined that the Claimant's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations, the ALJ enlisted a vocational expert to aid in finding that Claimant is capable of working as a system administrator. (Tr. 22.) As a result, the ALJ concluded that the Claimant was not under a disability from the

amended alleged onset date of March 15, 2019 through the date last insured of March 31, 2020. (Tr. 22.)

## II. LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III. ANALYSIS

### A. Constitutional Challenges

First, Claimant challenges the decision of the Social Security Administration ("SSA") in this case because "SSA's structure is unconstitutional as it violates separation of powers." (ECF No. 8 at 10.) Specifically, Plaintiff argues that "[t]he United States

12

Supreme Court has held that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause." *Id.* at 9 (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020)). According to Plaintiff, the "constitutionally invalid structure" of the Consumer Financial Protection Bureau at issue in the *Seila Law LLC* case "is identical to that of the Social Security Administration ['SSA']," in that "[t]he Commissioner of SSA is the singular head of the [SSA], serves for six years, and cannot be removed by the President except for cause ('neglect of duty or malfeasance in office')." *Id.* at 9-10 (citing 42 U.S.C. § 902(a)(3)). Plaintiff further maintains that "[t]he ALJ's delegation of authority in this case came from [then-Commissioner] Andrew Saul and is therefore constitutionally defective." *Id.* (citing Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-0-2(A)), as well as that "the ALJ decided this case under regulations promulgated by [then-Commissioner] Saul when [he] had no constitutional authority to issue those rules." *Id.* In Plaintiff's view, the ALJ's decision must be vacated because he did not have the authority to decide the case given the delegation of authority came from then-Commissioner Saul, who Plaintiff argues had no constitutional authority to head the SSA.

In contrast to Appointments Clause cases, where harm is presumed when courts have found unconstitutional the very authority under which a government official has acted, the instant circumstances require Claimant to demonstrate that the unconstitutional provision regarding the SSA Commissioner's tenure impacted then-Commissioner Saul's ability to carry out the duties of his office; harm is not presumed. *See Gilmore v. Kijakazi*, 1:21-cv-420, 2022 WL 2869047 (M.D.N.C. July 21, 2022). In fact, the U.S. Supreme Court in *Seila Law LLC* expressly rejected the plaintiffs' argument

13

that because the agency head's tenure provision was unconstitutional, all agency action should be rendered unconstitutional automatically. *Seila Law*, 140 S. Ct. at 2209. To the contrary, the Supreme Court concluded that the removal limitation was severable because the agency "remain[ed] fully operative without the offending tenure restriction." *Id*. Nor has Claimant pointed to any authority supporting the argument that an invalid tenure provision rendered the SSA's actions void from the outset. To the contrary, "[c]ourts across the country have uniformly concluded that the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) does not require remand." *Fish v. Kijakazi*, 5:21-cv-182, 2022 WL 1504887, at *6 (N.D. W. Va. Apr. 26, 2022) (collecting cases), *recommendation adopted*, 2022 WL 1498115 (N.D. W. Va. May 11, 2022). Similarly, Claimant here has not pointed the Court to any "new regulations, agency policies or directives Commissioner Saul installed that may have affected [his] claims." *Gilmore*, 2022 WL 2869047, at *13. Simply put, the unconstitutional structure of the SSA—without more—does not entitle Claimant to the relief sought.

### *B. The ALJ's RFC Determination*

Claimant next argues that the ALJ erred by failing to consider the effects of Claimant's non-severe, but medically-determinable, mental impairments in determining Claimant's RFC. (ECF No. 8 at 5.) In response, the Commissioner argues that because the record "reflected anxiety and depression that caused no more than mild limitations but not severe impairments . . . [t]he evidence relied on by the ALJ comprised such relevant evidence as a reasonable mind might accept as adequate to support the mental RFC." (ECF No. 11 at 20.)

Where, as here, the ALJ finds that the Claimant does have a severe impairment or combination of impairments, the ALJ must "consider the combined effect of all of

[Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. In other words, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p.

The case cited by Plaintiff, *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004), is illustrative. In *Young*, the ALJ found that the claimant was severely impaired by an adjustment disorder, and the ALJ credited the findings of medical experts who found that the claimant was moderately limited in his ability to carry out detailed instructions, interact appropriately with the general public, and respond to criticism from supervisors. *Id*. The *Young* Court remanded the action because on review, it was unable to determine "whether the ALJ's assessment of [the claimant's] RFC adequately considers these personality disorders." *Id*. Although the RFC required the claimant to have limited contact with the public and coworkers, "it sa[id] nothing of limiting contact with supervisors[.]" *Id*. The Seventh Circuit in *Young* concluded that "[i]f the ALJ meant to capture all of Young's social and temperament problems within this RFC, he has failed to build the accurate and logical bridge from the evidence to his conclusion" as is required of an ALJ "so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Id*.

Here, just as in *Young*, there was evidence of Claimant's mental impairments on the record. Claimant's treatment notes document symptoms of depressed mood and anxiety, and he was prescribed an antidepressant medication. (Tr. 383-388.) The ALJ found that Claimant had a mild limitation with concentrating, persisting, or maintaining pace, based upon Claimant's testimony that his depression and anxiety caused him to have a hard time focusing. (Tr. 15.) Likewise, the ALJ found that Claimant had a mild

15

limitation with adapting or managing oneself based upon Claimant's testimony that he was unable to do chores, go grocery shopping, or prepare meals, and that he had difficulty showering. (Tr. 16.) However, the ALJ failed to include these limitations in his RFC finding. This is significant because, as Claimant points out, "non-severe mental impairments causing even mild limitations in concentration, persistence or pace can impact an individual's ability to perform skilled work." (ECF No. 8 at 6 (citing *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("Even a non-severe impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction")).) Perhaps the ALJ determined that the non-severe impairments at issue did not impact Claimant's work abilities; if so, however, such a conclusion must be elucidated and supported in writing, "building the accurate and logical bridge from the evidence to his conclusion." *Young*, 362 F.3d at 1002. Without the ALJ's appropriate explanation, the Court is unable to afford Claimant meaningful judicial review. *Id. See also Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). As a result, remand is appropriate.

### IV. CONCLUSION

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding United States District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 8), **DENY** the Commissioner's request to affirm her decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Frank W. Volk, United

States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Volk.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: December 19, 2022

Dwane L. Tinsley
United States Magistrate Judge